United States District Court

For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAMTA PATEL-PURI,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>METROPOLITAN LIFE INSURANCE COMPANY et al.,<br><br>　　　　　Defendants.<br>_____/ | No. C-05-0455 MMC<br><br>**AMENDED ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT RE: STANDARD OF REVIEW; GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT RE: STANDARD OF REVIEW; VACATING HEARING**<br><br>(Docket Nos. 24, 26) |

Before the Court are the parties' cross-motions for summary judgment, filed January 9, 2006, with respect to the standard of review in this ERISA disability benefits action. Defendants Metropolitan Life Insurance Company ("MetLife"), Kaiser Foundation Health Plan, Inc. ("Kaiser") and Kaiser Foundation Health Plan, Inc. Long Term Disability Plan ("Plan") have filed a joint opposition to the motion filed by plaintiff Mamta Patel-Puri, to which plaintiff has replied. Plaintiff has filed opposition to defendants' motion, to which defendants have filed a joint reply.[1] Having considered the papers filed in support of and in opposition to the motions, the Court finds the matters appropriate for decision without oral

---

[1] Plaintiff's opposition to defendants' motion is inaccurately titled "reply" and her reply is inaccurately titled "surreply and opposition." The Court further notes that plaintiff's motion and reply are not filed on numbered pleading paper. Plaintiff is directed to Civil L.R. 3-4(c)(1), which requires that "all papers presented for filing must be on . . . paper . . . with numbered lines." See Civil L.R. 3-4(c)(1).

argument, see Civil L.R. 7-1(b), hereby VACATES the March 17, 2006 hearing, and rules as follows.

**BACKGROUND**

Plaintiff alleges she became disabled in January 2002 due to "orthopedic and neuromuscular impairments" resulting from two automobile accidents in 2001. (See First Amended Complaint ("FAC") ¶¶ 2, 5; see Plaintiff's Motion at 2.) On June 10, 2002, plaintiff filed an application for long-term disability benefits under the Plan. (See Plaintiff's Administrative Record ("PAR") at 143.) The Plan identifies Kaiser as the employer and plan administrator, and identifies MetLife as the insurer of the Plan. (See id. at 34.)

In a letter dated June 21, 2002, MetLife notified plaintiff that it had received her claim, and that she needed to submit, no later than July 19, 2002, additional information in support of her claim. (See Sullivan Decl. Ex. A at 0106.) Thereafter, in a letter dated July 26, 2002, MetLife notified plaintiff that because she had not submitted the requisite information, it assumed she no longer was interested in pursuing a disability claim, and closed her file. (See id. at 0104.) In said letter, MetLife informed plaintiff that she was entitled to submit an appeal. (See id.)

In a letter dated August 30, 2002, plaintiff appealed the denial of her claim, submitted some of the requested information, and informed MetLife that the remainder would be sent shortly. (See id. at 0087.) On September 19, 2002, MetLife notified plaintiff by telephone that her complete claim had been received and would be reviewed. (See id. at 0005.)

In a letter dated September 30, 2002, MetLife denied plaintiff's appeal. (See id. at 225-26.) In said letter, MetLife explained that because plaintiff first became eligible for long-term disability coverage in 1997, but did not enroll in the Plan until January 2002, plaintiff was not covered under the Plan until she submitted "Evidence of Good Health"

approved by MetLife.[2] (See id.) Because plaintiff had not done so, Metlife stated, she was not covered under the Plan. (See id.)

Thereafter, in telephone calls made on November 8, 2002 and December 27, 2002, Kaiser advised MetLife that, due to an administrative error, plaintiff had not been provided an opportunity to enroll in long term disability coverage when she first became eligible to do so in January 1997; Kaiser sought to backdate her effective date of coverage to January 1, 1997.[3] (See Sullivan Decl. Ex. A at 0009-10.) MetLife asked Kaiser to provide a copy of the initial enrollment card signed by plaintiff, verify that all premiums had been paid since January 1997, and submit a detailed letter of explanation. (See id.) MetLife notes dated January 6, 2003 state that because the premium for long-term disability coverage is 100% employer paid, and plaintiff did not elect coverage until January 1, 2002, there was no premium payment prior to that date. (See id. at 0012.) MetLife upheld its determination that plaintiff was not covered under the Plan. (See id. at 0013.)

In a letter dated January 23, 2003, Kaiser informed plaintiff that, "[d]ue to administrative error, [she had been] enrolled in the Long Term Disability Program without approval from Met Life." (See PAR at 128.) In particular, Kaiser explained, plaintiff had been required to submit an "Evidence of Insurability" form approved by MetLife.[4] (See id.) Because such form had not been received, Kaiser informed plaintiff that she had been enrolled in the Plan in error, and refunded her 2002 benefit year premiums. (See id.)

---

[2] The Plan provides: "If you make a request to become covered under This Plan during an annual enrollment period, but after: [1] your Eligibility Date; or [2] electing no coverage when you first become eligible for coverage under This Plan; Evidence of Good Health must be given to us. Your coverage will become effective on the latest of the following dates: . . . [2] the date we approve your Evidence of Good Health[.]" (See PAR at 12.) The Plan further provides that references to "we" in the Plan refer to Metlife. (See id. at 3.)

[3] Plaintiff states in her motion, albeit without citation to the record, that Kaiser's failure in 1997 to offer her an opportunity to enroll in the Plan was discovered when plaintiff got married and attempted to add her husband to her policy as a dependent. (See Plaintiff's Motion at 3.)

[4] Defendants state that Kaiser's reference to "Evidence of Insurability" refers to the "Evidence of Good Health" requirement discussed above. (See Defendants' Reply at 4 n.5.)

3

Thereafter, in a letter to Kaiser dated January 31, 2003, plaintiff appealed Kaiser's determination that she had been erroneously enrolled in the plan. (See id. at 130.) In a letter dated July 10, 2003, Kaiser informed plaintiff that her appeal had been approved and that Kaiser would "instruct MetLife to resume the processing of [her] claim, which [MetLife] had suspended due to [its] finding that [plaintiff] was not an eligible participant" in the Plan. (See id. at 98.)

Thereafter, in a letter dated August 28, 2003, Kaiser advised plaintiff that MetLife's further investigation of her claim "revealed that [her] disability is due to a medical condition for which [plaintiff] received treatment during the three months prior to [her] enrollment" in the Plan. (See id. at 99.) Kaiser further stated therein that the Plan excludes coverage for such pre-existing conditions and that, consequently, "no Long-Term Disability Benefits are payable."[5] (See id. at 99-100.)

Plaintiff filed the instant lawsuit February 1, 2005, pursuant to ERISA, seeking an award of long term disability benefits under the Plan.

**LEGAL STANDARD**

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment as to "all or any part" of a claim "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." See Fed. R. Civ. P. 56(b), (c). Material facts are those that may affect the outcome of the case. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. See id. The Court may not weigh the evidence. See id. at 255. Rather, the nonmoving party's evidence must be believed and "all justifiable inferences must be drawn in [the nonmovant's] favor." See

---

[5] The Plan provides: "Coverage for Pre-existing Conditions begins 12 months after your Effective Date of coverage." (See PAR at 10.) A pre-existing condition is defined, inter alia, as an injury for which the claimant received medical treatment in the three months before the effective date of coverage. (See id. at 21.)

4

1  United Steelworkers of Am. v. Phelps Dodge Corp., 865 F.2d 1539, 1542 (9th Cir. 1989)
2  (en banc) (citing Liberty Lobby, 477 U.S. at 255).

## DISCUSSION

Under ERISA, a plan participant or beneficiary may bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan[.]" See 29 U.S.C. § 1132(a)(1)(B). The Supreme Court has held that a "denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." See Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). A plan administrator has such discretion only "where discretion [is] 'unambiguously retained' by the administrator." See Kearney v. Standard Ins. Co., 175 F.3d 1084, 1090 (9th Cir. 1999) (en banc) (quoting Bogue v. Ampex Corp., 976 F.2d 1319, 1325 (9th Cir. 1992)). The plan administrator bears the burden of proving that the plan language unambiguously grants the plan administrator such discretionary authority. See Kearney, 175 F.3d at 1089 (noting "the default is that the administrator has no discretion, and the administrator has to show that the plan gives it discretionary authority in order to get any judicial deference to its decision").

### A.  Plan Language

The Plan language in question provides:

> In carrying out their respective responsibilities under the Plan, the Plan administrator and other Plan fiduciaries shall have discretionary authority to interpret the terms of the Plan and to determine eligibility for and entitlement to Plan benefits in accordance with the terms of the Plan. Any interpretation or determination made pursuant to such discretionary authority shall be given full force and effect, unless it can be shown that the interpretation or determination was arbitrary and capricious.

(See Plaintiff's Administrative Record ("PAR") at 35.) Such language unambiguously grants discretionary authority to the Plan administrator and other Plan fiduciaries to determine eligibility for benefits and to construe the terms of the Plan. See, e.g., Jordan v. Northrop Grumman Corp. Welfare Benefit Plan, 370 F.3d 869, 875 (9th Cir. 2003) (finding

plan language granting plan administrator "the discretion to construe and interpret the terms of the Plan and the authority and responsibility to make factual determinations" sufficient to grant discretionary authority); see also Friedrich v. Intel Corp., 181 F.3d 1105, 1110 n.5 (9th Cir. 1999) (finding plan language granting plan administrator "sole discretion to interpret the terms of the Plan and to determine eligibility for benefits" sufficient to grant discretionary authority).

Kaiser is expressly identified in the Plan as the plan administrator. (See PAR at 34.) MetLife is identified as the insurer of the Plan; the Plan further provides that requests for review of a denial of a claim are to be sent to MetLife, who will "re-evaluate all the information" and inform the claimant of a decision in a timely manner. (See PAR at 34, 35.) As defendants note, ERISA requires every plan to designate a fiduciary to review denials of claims, see 29 U.S.C. § 1133, and, additionally, defines "fiduciary" to include any person who "has any discretionary authority or discretionary responsibility in the administration of such plan." See 29 U.S.C. § 1002(21). Accordingly, the above-referenced Plan language grants discretionary authority to both Kaiser and MetLife to determine eligibility for benefits and to construe the terms of the Plan.[6]

**B. Conflict of Interest**

Plaintiff nonetheless argues that de novo review is required because defendants acted under a conflict of interest. The Supreme Court has held that where an ERISA benefits plan "gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a factor in determining whether there is an abuse of discretion." See Firestone v. Bruch, 489 U.S. at 115 (internal quotation and

---

[6] Plaintiff argues that the Plan is ambiguous as to whether Kaiser has the sole authority to determine whether plaintiff is insured under the Plan and, if so, to determine her effective date of coverage. The Court disagrees. The above-quoted language unambiguously grants discretionary authority to both Kaiser and MetLife to determine "eligibility" for and "entitlement" to benefits. A determination as to whether a claimant is an insured under the Plan is a necessary part of the ultimate determination as to whether that claimant is eligible for and entitled to benefits. Although the Plan also states the "Employer" will certify that a claimant is insured, (see PAR at 35), nothing in the policy even suggests that such certification is not subject to further review by MetLife.

6

citation omitted).  Where a fiduciary acts "in apparent conflict with its beneficiaries," e.g., when the plan administrator funds the plan from its own assets, the Ninth Circuit has set forth a "two-part test to determine whether to invoke heightened scrutiny of a benefits decision made" under such apparent conflict.  See Friedrich v. Intel Corp., 181 F.3d at 1109.  "First, the beneficiary needs to shoulder the burden of providing material, probative evidence, beyond the mere fact of the apparent conflict, tending to show that the fiduciary's self-interest caused a breach of the administrator's fiduciary obligations to the beneficiary." Id. (internal quotation and citation omitted).  "If the beneficiary comes forward with such evidence, the plan bears the burden of producing evidence to show that the conflict of interest did not affect the decision to deny benefits." Id.  "If the plan does not meet its burden, courts review the decision to deny benefits de novo." Id.  In the instant case, plaintiff has not submitted any evidence on the threshold issue of whether either of the defendants acted under an apparent conflict of interest, but, rather, assumes such a conflict exists.  As discussed below, the two defendants are not similarly situated in that regard.

### 1. Kaiser

There is no evidence that Kaiser funds the Plan from its own assets.  Accordingly, there is no evidence that Kaiser acted under an apparent conflict of interest and, consequently, to the extent Kaiser made any of the final decisions at issue herein, the Court will review those decisions for abuse of discretion.

### 2. MetLife

Defendants concede that "MetLife funds the Plan and is a Plan fiduciary, and therefore has an apparent conflict."  (See Defendants' Motion at 13.)  Plaintiff, however, has the burden of submitting "material, probative evidence, beyond the mere fact of the apparent conflict, tending to show that the fiduciary's self-interest caused a breach of the administrator's fiduciary obligations to the beneficiary."  See Friedrich, 181 F.3d at 1109 (internal quotation and citation omitted).  Plaintiff argues that the following acts or omissions constitute such material, probative evidence: (1) plaintiff was not given a

summary plan description in 1997 when she first became eligible for coverage under the Plan; (2) her claim was not processed in a timely manner; (3) Metlife provided inconsistent reasons for denying her claim, specifically, its initial reliance on plaintiff's failure to provide "Evidence of Good Health" and its subsequent finding that plaintiff's preexisting condition precluded coverage; (4) no appeal rights were mentioned in the August 28, 2003 letter denying her claim; and (5) Metlife never determined whether she is disabled.

### a. Failure to provide summary plan description

In determining whether a plan fiduciary's apparent conflict of interest affected its denial of a plaintiff's claim, courts focus on the manner in which the fiduciary processed the plaintiff's claim. See, e.g., Tremain v. Bell Industries, Inc., 196 F.3d 970, 974, 977 (9th Cir. 1999) (finding actual conflict of interest where plan denied claim based on definition of disability from different plan that was more stringent than definition in plan at issue); Friedrich, 181 F.3d at 1110 (finding actual conflict of interest where claims process utilized by plan "denied [claimant] the opportunity to demonstrate disability").  Here, any failure by MetLife to provide plaintiff with a summary plan description in 1997 pre-dated the submission of plaintiff's claim by five years.  Accordingly, evidence of such omission does not demonstrate that MetLife denied plaintiff's claim because of its own self-interest.

### b. Untimely claim processing

ERISA regulations provide that the plan administrator must notify the claimant of a denial of a claim within 45 days after receipt of a claim, although said period may be extended for up to 30 days under certain circumstances.  See 29 C.F.R. § 2560.503-1(f)(3). Appeals must be decided within 45 days, although said period may be extended for up to an additional 45 days under certain circumstances.  See 29 C.F.R. § 2560.503-1(h)(3).[7] Plaintiff's claim was submitted June 10, 2002, received by MetLife June 12, 2002, and denied 44 days later, on July 26, 2002.  Plaintiff's appeal was submitted August 30, 2002, and was denied 31 days later, on September 30, 2002.  Consequently, MetLife processed

---

[7] The Plan itself provides for longer time periods for review of claims and appeals. (See PAR at 59-60, §§ 7.2, 7.5.)

8

both plaintiff's claim and her appeal in a timely manner.  Although the final denial of her appeal did not occur until August 28, 2003, nearly one year after the appeal was submitted, nothing in either the Plan or ERISA regulations sets forth a procedure for reconsideration of a Plan's denial of an appeal, or a time limit for a Plan to do so.

Even assuming, arguendo, plaintiff's appeal was decided in violation of ERISA time limits, the Ninth Circuit has held that "procedural violations of ERISA do not alter the standard of review unless those violations are so flagrant as to alter the substantive relationship between the employer and employee, thereby causing the beneficiary substantive harm." See Gatti v. Reliance Standard Life Ins. Co., 415 F.3d 978, 985 (9th Cir. 2005).  In so holding, the Ninth Circuit referenced its earlier decision in Blau v. Del Monte Corp., 748 F.2d 1348 (9th Cir. 1984), where the Court found the defendant therein had "failed to comply with virtually every applicable mandate of ERISA" and thereby "alter[ed] the substantive relationship between employer and employee[.]"  See Blau, 748 F.2d at 1353.  Here, there is no evidence of widespread procedural violations of ERISA, and plaintiff has submitted no evidence that the delay in processing her claim caused her any substantive harm.

### c. Inconsistent reasons for denying claim

The Ninth Circuit has held that inconsistencies in the reasons provided for denying a claim may constitute material, probative evidence that the decision was motivated by self-interest.  See, e.g., Lang v. Long-Term Disability Plan of Sponsor Applied Remote Technology, Inc., 125 F.3d 794, 799 (9th Cir. 1997).  Here, however, the reasons given for the denial of plaintiff's claim are not inconsistent.  As noted, MetLife initially denied plaintiff's appeal on the ground she was not insured under the policy, due to her failure to submit the requisite "Evidence of Good Health."  (See PAR at 225-26.)  Having denied plaintiff's claim on the basis that she was not an insured, MetLife had no reason at that time to determine whether her claim would have been covered had she been an insured. Thereafter, when it was determined plaintiff should be considered a Plan participant, because her failure to submit the requisite "Evidence of Good Health" may have been "due

9

to administrative error," (see id. at 99), MetLife processed her claim on its merits and determined she was not entitled to benefits under the Plan due to a pre-existing condition. (See id.) MetLife's reasons for denying plaintiff's claim are not inconsistent.[8]

### d. Failure to notify plaintiff of appeal rights

Plaintiff correctly notes that the August 28, 2003 letter denying her claim for benefits does not notify plaintiff of any further right to appeal the decision to MetLife. (See PAR at 99-100.) As defendants point out, however, the August 28, 2003 decision is the result of an appeal by plaintiff. Plaintiff has cited no authority, and the Court is aware of none, requiring MetLife to afford plaintiff the opportunity to file multiple internal appeals.

### e. Failure to determine whether plaintiff is disabled

Plaintiff argues, relying on Jebian v. Hewlett Packard Co., 310 F.3d 1173 (9th Cir. 2000), that because MetLife never exercised its discretion to determine whether her medical evidence supports her claim of disability, its denial of her claim must be reviewed de novo. Jebian is distinguishable, however, because in that case the defendant made no determination of any sort with respect to the plaintiff's appeal until after the plaintiff had filed suit in federal court. See id. at 1102. Here, MetLife expressly denied plaintiff's appeal, and did so on grounds that did not require a determination as to whether plaintiff is disabled. The Court is aware of no authority requiring an ERISA defendant to evaluate medical evidence of disability where such evidence is not relevant to the grounds for denial of the claim.

### f. Summary

Plaintiff has failed to set forth material, probative evidence that MetLife's apparent conflict of interest had any effect on the denial of her claim. Accordingly, the denial of plaintiff's claim will be reviewed for abuse of discretion.

---

[8] Indeed, MetLife's notes from its initial interview with plaintiff, dated September 20, 2002, state plaintiff was advised at that time that even if she is insured under the Plan, the pre-existing condition provision may apply. (See Sullivan Decl. Ex. A at 0006.)

**CONCLUSION**

For the reasons set forth above,

1. Plaintiff's motion for summary judgment with respect to the standard of review is DENIED.

2. Defendants' motion for summary judgment with respect to the standard of review is GRANTED. The denial of plaintiff's claim will be reviewed for abuse of discretion.

This order terminates Docket Nos. 24 and 26.

**IT IS SO ORDERED.**

Dated: May 26, 2006

MAXINE M. CHESNEY
United States District Judge