1

2

3

4

5

6

7

8          IN THE UNITED STATES DISTRICT COURT

9          FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11   MAMTA PATEL-PURI,                    No. C-05-0455 MMC

12          Plaintiff,                    **ORDER DENYING PLAINTIFF'S MOTION
                                          FOR SUMMARY JUDGMENT;**
13      v.                                **GRANTING DEFENDANTS' MOTION
                                          FOR SUMMARY JUDGMENT**
14   METROPOLITAN LIFE INSURANCE
     COMPANY et al.,
15
            Defendants.
16
     _____/
17

18          Before the Court are motions filed by plaintiff Mamta Patel-Puri, and by defendants

19   Metropolitan Life Insurance Company ("MetLife"), Kaiser Foundation Health Plan, Inc.

20   ("Kaiser") and Kaiser Foundation Health Plan, Inc. Long Term Disability Plan ("Plan"),

21   respectively, for summary judgment on plaintiff's claim under 29 U.S.C. § 1132 ("ERISA").[1]

22   The motions came before the Court for hearing on May 9, 2008.  Mark Lipton of Lipton,

23   Warnlof & Hallbauer appeared on behalf of plaintiff; William Lee of Barger & Wolen LLP

24   appeared on behalf of defendants.  Having considered the papers filed in support of and in

25   opposition to the motions, and the arguments of counsel, and for the reasons stated on the

26   _____

27          [1] Also before the Court is defendants' motion to strike portions of the Declaration of
     Mark Lipton filed in support of plaintiff's opposition, on the ground that paragraphs 14-16,
28   18, and 21-25 contained therein constitute improper argument and opinion.  No opposition
     to the motion to strike has been filed.  The motion is hereby GRANTED, for the reason that
     the paragraphs identified by defendants constitute argument; further, the Court has
     considered such argument to the extent it is included in plaintiff's opposition.

1    record at the hearing, as well as for the reasons set forth below, the Court rules as follows.

2                    **FACTUAL AND PROCEDURAL BACKGROUND**[2]

3          Plaintiff began employment with Kaiser Permanente on October 25, 1993, and first

4    became eligible to participate in the Plan on January 1, 1997, when she received a

5    promotion.  (See Pl.'s Mot. at 2; Defs.' Mot. at 2.)  Plaintiff was not notified of her eligibility

6    to participate in the Plan, offered the opportunity to enroll in the Plan, or sent a Summary

7    Plan Description ("SPD") until the end of 2001, when plaintiff requested that her husband

8    be enrolled as a dependent in her medical plan.  (See Pl.'s Administrative Record ("PAR")

9    filed February 1, 2005, at 235-37.)  At that time, plaintiff received an "enrollment package"

10   and elected coverage under the Plan.  (See id. at 237.)  Plaintiff enrolled in the Plan

11   effective January 1, 2002.  (See id. at 225.)  The Plan identifies Kaiser as the employer and

12   plan administrator, and identifies MetLife as the insurer of the Plan.  (See id. at 34.)

13         On June 21, 2002, plaintiff filed a claim for disability benefits under the Plan, (see id.

14   at 158), in which claim she stated that her disability began January 27, 2002, and was due

15   to "injury/accident[s]" occurring on August 19, 2001 and November 16, 2001.  (See id.)

16   Plaintiff specified therein that she experienced "neck pain," and had "trouble holding [her]

17   head up and rotating/turning it," as well as "back pain, muscle spasms, swelling, shoulder

18   pain, [and] headaches."  (See id.)

19         In a letter dated June 21, 2002, MetLife notified plaintiff that it had received her

20   claim, and that she needed to submit additional information in support of her claim no later

21   than July 19, 2002.  (See Decl. of Laura Sullivan in Support of Defs.' Mot. for Summary J.

22   on the Merits ("Sullivan Decl.") Ex. A at 0106.)  Thereafter, in a letter dated July 26, 2002,

23   MetLife notified plaintiff that because she had not submitted the requisite information, it

24   assumed she no longer was interested in pursuing a disability claim, and closed her file.

25   (See id. at 0104.)

26         In a letter dated August 30, 2002, plaintiff appealed the denial of her claim,

27   _____

28        [2] The following facts are either undisputed or read in the light most favorable to
     plaintiff.

                                        2

1   submitted some of the requested information, and informed MetLife that the remainder

2   would be sent shortly.  (See id. at 0087.)  On September 19, 2002, MetLife notified plaintiff

3   by telephone that her complete claim had been received and would be reviewed.  (See id.

4   at 0005.)

5       By letter dated September 30, 2002, MetLife denied plaintiff's appeal.  (See PAR at

6   225-26.)  MetLife explained therein that because plaintiff first became eligible for long-term

7   disability coverage in 1997, but did not enroll until January 2002, plaintiff was required to

8   have submitted an "Evidence of Good Health Statement" for MetLife's approval,[3] and that

9   because plaintiff had not done so, she was not covered under the Plan.  (See id.)

10      Thereafter, Kaiser advised MetLife that, due to Kaiser's "oversight," (see Sullivan

11  Decl. Ex. A at 0010), plaintiff had not been provided an opportunity to enroll in the Plan at

12  the time she first became eligible to do so in January 1997, and that after plaintiff notified

13  Kaiser of her marriage, Kaiser sent her an enrollment package that did not contain an "E of

14  I form," (see id. at 0009-10).[4]  Kaiser stated it had "corrected" its records to reflect plaintiff's

15  effective date of coverage as January 1, 1997, and requested that MetLife review plaintiff's

16  claim.  (See id.)  MetLife advised Kaiser that Kaiser would need to provide a copy of the

17  initial enrollment card signed by plaintiff, verify that all premiums had been paid since

18  January 1997, and submit a detailed letter of explanation.  (See id.)  On January 3, 2003,

19  Kaiser instead submitted an amended employer's statement identifying plaintiff's effective

20  date of coverage as January 1, 1997.  (See PAR at 228.)

21      Thereafter, MetLife, recognizing that plaintiff's effective date of coverage had been

22  changed to January 1, 1997, but noting that plaintiff had not paid any premiums prior to her

23

24

25      [3] The Plan provides: "If you make a request to become covered under This Plan
26  during an annual enrollment period, but after: 1. your Eligibility Date; or 2. electing no
    coverage when you first become eligible for coverage under This Plan; Evidence of Good
    Health must be given to [MetLife]." (See PAR at 12.)
27

28      [4] According to defendants, "E of I" refers to "Evidence of Insurability," which in turn
    refers to the "Evidence of Good Health" requirement.  (See Defs.' Reply at 4 n.5.)

1   enrollment in the Plan on January 1, 2002,[5] determined that plaintiff "did not have LTD

2   coverage" going back to 1997.  (See Sullivan Decl. at 0012.)  On January 23, 2003,[6] Kaiser

3   wrote plaintiff to inform her that she had been enrolled in the Plan in 2002 without

4   completing an Evidence of Insurability form or obtaining approval from MetLife, "[d]ue to

5   administration error," and enclosed a refund for the "2002-benefit year premiums" plaintiff

6   had paid.  (See PAR at 128.)

7       By letter dated January 31, 2003, plaintiff appealed Kaiser's determination that she

8   was ineligible for benefits, arguing that any deficiency in her 2002 enrollment was due to

9   Kaiser's administrative error.  (See id. at 130.)  On July 10, 2003, Kaiser informed plaintiff

10  that her appeal to Kaiser had been approved and that Kaiser would "instruct MetLife to

11  resume the processing of [her] claim, which [MetLife] had suspended due to [its] finding

12  that [plaintiff] was not an eligible participant" in the Plan.  (See PAR at 98.)  MetLife

13  subsequently determined, however, that plaintiff's disability resulted from injuries sustained

14  prior to January 1, 2002, and that even "[i]f [plaintiff] did have LTD coverage, [the] claim

15  would have been denied based on the pre-existing condition clause of the Plan."[7]   (See

16  Decl. of Joanne Carroll in Support of Defs.' Mot. for Summary J. on the Merits ("Carroll

17  Decl.") Ex. A at 231.)  MetLife's determination was forwarded to Kaiser on August 27, 2003.

18  (See id. at 229.)

19      In a letter dated August 28, 2003, Kaiser notified plaintiff that her claim had been

20

21      [5] The premium for long-term disability coverage under the Plan is 100% employee
22  paid.  (See id.)

23      [6] The letter's date of "January 23, 2002" appears to be a typographical error, as the
    letter is described "as a follow-up" to plaintiff's conversation with a Kaiser employee "on
24  January 17, 2003," (see PAR at 128), and the accompanying refund check is dated
    January 24, 2003, (see id. at 129).

25      [7] The Plan provides: "Coverage for Pre-existing Conditions begins 12 months after
    your Effective Date of coverage."  (See PAR at 10.)  A pre-existing condition is defined as
26  an "injury, sickness, or pregnancy" for which in the three months before the effective date
    of coverage the claimant "received medical treatment, consultation, care, or services," "took
27  prescription medications or had medications prescribed," or "had symptoms or conditions
    which would cause a reasonably prudent person to seek diagnosis, care, or treatment."
28  (See id. at 21.)

4

1  denied, (see PAR at 99), explaining that MetLife had processed plaintiff's claim and that its

2  investigation had "revealed that [plaintiff's] disability is due to a medical condition for which

3  [plaintiff] received treatment during the three months prior to [her] enrollment" in the Plan.

4  (See id.)  Kaiser informed plaintiff that because the Plan excludes coverage for such pre-

5  existing conditions, "no Long-Term Disability Benefits are payable."  (See id. at 99-100.)

6      On February 1, 2005, plaintiff filed the instant action.[8]  Plaintiff seeks equitable relief

7  in the form of an order directing Kaiser "to process [plaintiff's claim] with an enrollment date

8  of 1/1/97, to complete and update the medical record and make a decision."  (See Pl.'s

9  Mot. at 18:11-13.)

10     In an order filed March 17, 2006, and amended May 26, 2006, the Court found both

11 Kaiser and MetLife have discretion to determine eligibility for benefits and, accordingly, are

12 fiduciaries under ERISA.  (See Am. Order filed May 26, 2006 at 6:11-16.)

13                              **LEGAL STANDARD**

14     Rule 56 of the Federal Rules of Civil Procedure provides that a court may grant

15 summary judgment "if the pleadings, the discovery and disclosure materials on file, and any

16 affidavits show that there is no genuine issue as to any material fact and that the movant is

17 entitled to judgment as a matter of law."  See Fed. R. Civ. P. 56(c).

18     The Supreme Court's 1986 "trilogy" of Celotex Corp. v. Catrett, 477 U.S. 317 (1986),

19 Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986), and Matsushita Electric Industrial Co.

20 v. Zenith Radio Corp., 475 U.S. 574 (1986), requires that a party seeking summary

21 judgment show the absence of a genuine issue of material fact.  Once the moving party

22 has done so, the nonmoving party must "go beyond the pleadings and by [its] own

23 affidavits, or by the depositions, answers to interrogatories, and admissions on file,

24 designate specific facts showing that there is a genuine issue for trial."  See Celotex, 477

25

26     [8]  In her complaint, plaintiff does not specify the particular subsection under which
    she seeks relief; at the May 9, 2008 hearing, however, plaintiff clarified that she seeks
27  equitable relief under 29 U.S.C. § 1132(a)(3), and that absent a finding of entitlement to
    relief under § 1132(a)(3), she is not seeking an award of benefits under § 1132(a)(1)(B).
    Accordingly, in light of the Court's decision with respect to plaintiff's claim under
28  § 1132(a)(3), the Court does not address herein plaintiff's claim under § 1132(a)(1)(B).

                                        5

1    U.S. at 324 (internal quotation and citation omitted).  "When the moving party has carried

2    its burden under Rule 56(c), its opponent must do more than simply show that there is

3    some metaphysical doubt as to the material facts."  Matsushita, 475 U.S. at 586.  "If the

4    [opposing party's] evidence is merely colorable, or is not significantly probative, summary

5    judgment may be granted."  Liberty Lobby, 477 U.S. at 249-50 (citations omitted).

6    "[I]nferences to be drawn from the underlying facts," however, "must be viewed in the light

7    most favorable to the party opposing the motion."  See Matsushita, 475 U.S. at 587

8    (internal quotation and citation omitted).

9    **DISCUSSION**

10          Plaintiff contends Kaiser owed plaintiff fiduciary duties under ERISA, specifically, a

11   duty to notify plaintiff of her eligibility to enroll in the Plan, and to provide plaintiff with a

12   Summary Plan Description ("SPD"), at the time plaintiff first became eligible to enroll in the

13   Plan on January 1, 1997.[9]  Plaintiff further contends that Kaiser's breach of said duties

14   entitles plaintiff to equitable relief.

15   **A.    Kaiser's Duty to Notify Plaintiff of Her Eligibility to Enroll**

16          At the outset, and contrary to defendants' argument, the Court finds plaintiff was a

17   "participant" in the Plan at the time she became eligible to enroll, and, as such, was an

18   individual to whom Kaiser, as plan administrator, owed fiduciary duties.  In the ERISA

19   context, a "participant" includes "any employee . . . who is or may become eligible to

20   receive a benefit of any type from an employee benefit plan."  See 29 U.S.C. § 1002(7)

21   (defining "participant").  Here, plaintiff became a "participant" on January 1, 1997, the date

22   on which she was promoted and became eligible to enroll in the Plan.

23          Defendants' reliance on 29 U.S.C. § 1021(a)(1), for its contention that Kaiser was

24   not required to provide plaintiff with a  Summary Plan Description ("SPD"), is misplaced.  In

25   particular, defendants assert that an administrator is required to provide a copy of the SPD

26   _____

27          [9] At the May 9, 2008 hearing, plaintiff clarified that her claim is that Kaiser was
     responsible for notifying plaintiff of her eligibility to enroll in the Plan, and that plaintiff is not
28   asserting a breach of fiduciary duty claim against any defendant other than Kaiser.

1    only to "each participant <u>covered under the plan</u>,"  <u>see</u> 29 U.S.C. § 1021(a) (emphasis

2    added), and thus conclude plaintiff was not "covered under the plan" until she began paying

3    premiums in January 2002.  Unlike § 1021(a)(1), however, § 1024(b)(1) does not contain

4    the additional qualifying term "covered under the plan."  Rather, § 1024(b)(1) provides that

5    the administrator shall, 90 days after he becomes a participant, "furnish to each

6    participant" a copy of the summary plan description.  <u>See</u> 29 U.S.C. § 1024(b)(1); <u>see</u> <u>also</u>

7    <u>McLeod v. Oregon Lithoprint Inc.</u>, 46 F.3d 956, 958-59 (9th Cir. 1995) (holding, in case

8    wherein plan administrator had failed to notify plaintiff of eligibility to apply for disability

9    coverage, plaintiff became "participant" as of date she first became eligible to enroll in

10   plan).[10]

11        Moreover, under ERISA, fiduciary duties may be imposed independent of those

12   expressly identified therein.  <u>See</u> 29 U.S.C. § 1104(a)(1) (providing fiduciary must

13   "discharge [its] duties with respect to a plan solely in the interest of the participants and

14   beneficiaries"); <u>see</u>, <u>e.g.</u>, <u>Peralta v. Hispanic Business, Inc.</u>, 419 F.3d 1064, 1071 (9th Cir.

15   2005) (holding "administrator's satisfaction of specific reporting requirements does not

16   necessarily satisfy its fiduciary responsibilities").  Here, the Court finds Kaiser, as the plan

17   administrator, had an independent fiduciary duty to notify its employees of their eligibility for

18   enrollment therein, and to do so at the inception of such eligibility.  <u>See</u> <u>McLeod</u>, 46 F.3d at

19   958 (holding plan administrator's failure to notify plaintiff of her eligibility to apply for

20   coverage presented "colorable claim" for breach of fiduciary duty); <u>see</u> <u>also</u> <u>Peralta</u>, 419

21   F.3d at 1073 (finding breach of fiduciary duty where employer failed to notify employees of

22   plan cancellation; noting such "requirement is implicit in the structure and purpose of

23   ERISA").

24        As discussed above, it is undisputed that plaintiff was not provided any materials

25

26        [10] Although the Supreme Court later vacated the judgment in <u>McLeod</u> and remanded
     the case for further consideration in light of intervening Supreme Court authority, <u>see</u>
27   <u>McLeod v. Oregon Lithoprint, Inc.</u>, 517 U.S. 1116 (1997), the Ninth Circuit, on remand,
     reiterated its prior holding that McLeod was a plan participant, <u>see</u> <u>McLeod v. Oregon</u>
28   <u>Lithoprint, Inc.</u>, 102 F.3d 376, 377 (9th Cir. 1996).

1   regarding the Plan, or other notice of the Plan, at or near the time she became eligible to

2   enroll in the Plan.  Accordingly, the Court finds Kaiser breached its fiduciary duties to

3   plaintiff.  The Court next addresses the question of whether such breach presents sufficient

4   grounds for equitable relief under § 1132.

5   **B.    Availability of Equitable Relief**

6           Under § 1132(a)(3), a participant may bring an action for equitable relief "(A) to

7   enjoin any act or practice which violates any provision of this subchapter or the terms of the

8   plan, or (B) to obtain other appropriate equitable relief (I) to redress such violations or (ii) to

9   enforce any provisions of this subchapter or the terms of the plan."  See 29 U.S.C.

10  § 1132(a)(3).[11]  To obtain relief under § 1132(a)(3), however, a plaintiff must be unable to

11  obtain relief under any other ERISA provision.  See, e.g., Varity Corp. v. Howe, 516 U.S.

12  489, 515 (1996) (holding equitable relief not appropriate where ERISA "elsewhere provides

13  adequate relief for a beneficiary's injury"); Forsyth v. Humana, Inc., 114 F.3d 1467, 1475

14  (9th Cir. 1997) (noting where relief available under other provision of ERISA, such as by

15  means of claim brought pursuant to § 1132(a)(1)(B) for denial of benefits, courts have

16  denied equitable relief under § 1132(a)(3)).[12]  Here, it is undisputed that by reason of

17  plaintiff's enrollment date of January 1, 2002, her claim for benefits was properly denied

18  due to a preexisting condition.  Under such circumstances, plaintiff cannot obtain relief

19

20          [11]  Contrary to plaintiff's argument, equitable estoppel is not available in the instant
    action, for the reason that, in the context of ERISA, equitable estoppel is "available only
21  where (a) the provisions of the plan are ambiguous such that reasonable persons
    could disagree as to their meaning or effect, and (b) representations are made to the
22  employee involving an oral interpretation of the plan."  See Greany v. Western Farm
    Bureau Life Ins. Co., 973 F.2d 812, 821 (9th Cir. 1992) (internal quotation and citation
23  omitted).  Plaintiff does not assert that either prerequisite is applicable herein.

24          [12]  A showing of injury is, of course, also required to obtain equitable relief.  See,
    e.g., Varity, 516 U.S. at 512 (noting § 1132(a)(3) offers equitable relief for "injuries" not
25  elsewhere adequately remedied).  Kaiser, by motion filed subsequent to the May 9, 2008
    hearing, seeks leave to file supplemental briefing in order to introduce evidence related to
26  the issue of injury, specifically, evidence showing plaintiff, had she received notice in 1997
    of her eligibility to enroll, would not in fact have elected to do so.  In light of the Court's
27  ruling herein, however, the Court does not reach the issue of injury.  Further, even if such
    additional evidence were submitted, a triable issue of fact as to plaintiff's state of mind in
28  1997 would remain.  Accordingly, the motion for leave is hereby DENIED as moot.

under § 1132(a)(1)(B) for wrongful denial of benefits, nor has any party suggested she

would be able to obtain relief under any other ERISA provision.

Where, as here, however, the breach consists of a procedural violation of ERISA

requirements, equitable relief, such as the retroactive enrollment requested by plaintiff, has

been afforded only where the procedural violation involves bad faith, active concealment, or

fraud on the part of the fiduciary.  See, e.g., Varity, 516 U.S. at 492, 515 (affirming

equitable relief of reinstatement in plan where administrator, through use of "trickery" and

"serious deception," had "significantly and deliberately misled" beneficiaries into forfeiting

their benefits); Peralta, 419 F.3d at 1075-76 (holding equitable relief "available where an

employer actively and deliberately misleads its employees to their detriment" or otherwise

engages in "egregious behavior"; holding equitable relief not available "where evidence is

simply of negligently inadequate communications about a policy cancellation"); Mathews v.

Chevron Corp., 362 F.3d 1172, 1183-85 (9th Cir. 2004) (affirming order granting equitable

relief of reinstatement in plan where employer breached fiduciary duty by "actively

misinforming" its employees about benefits under ERISA plan); see also Watson v.

Deaconess Waltham Hospital, 298 F.3d 102, 113-14 (1st Cir. 2002) (holding equitable relief

not available where employee "slipped through the cracks" due to employer's failure to

notify employee he was eligible to enroll in plan).

Here, plaintiff does not suggest, let alone submit evidence, that Kaiser's failure in

1997 to notify plaintiff of her eligibility to enroll in the Plan or to provide plaintiff with a copy

of the SPD was the result of bad faith, active concealment, or fraud.  Plaintiff asserts only

that such failure was due to "administrative oversight."  (See Pl.'s Mot. at 2:19.)  As noted,

such "negligently inadequate communications" do not justify equitable relief under §

1132(a)(3).  See Peralta, 419 F.3d at 1076.  As the Ninth Circuit observed in Peralta,

"[w]hile the effect on [the plaintiff] may be the same, whether the cause is deceit or merely

a breakdown in the channels of communication, . . . . [e]quity often involves the weighing of

wrongdoing as well as of harm."  id.  Here, as in Peralta, "the wrongful conduct did not even

approach the upper end of the scale."  See id.

9

**CONCLUSION**

Accordingly, for the reasons set forth above, plaintiff's motion for summary judgment is hereby DENIED and defendants' motion for summary judgment is hereby GRANTED.

**IT IS SO ORDERED.**

Dated: June 27, 2008

MAXINE M. CHESNEY
United States District Judge

10